STATE of Wisconsin, Plaintiff-Respondent,

v.

Gerald A. WITKOWSKI, Defendant-Appellant.†

Court of Appeals

*No. 87–1058–CR. Submitted on briefs December 7, 1987.—
Decided January 28, 1988.*

(Also reported 420 N.W.2d 420.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Richard D. Martin,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Barry M. Levenson,* assistant attorney general.

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J. Gerald Witkowski appeals from a judgment convicting him of attempted armed robbery in violation of secs. 943.32(1)(b), 943.32(2), and 939.32, Stats., and from an order denying his motion for postconviction relief. One of the elements of armed robbery is the "use or threat of use of a dangerous

weapon." Sec. 943.32(2). The sole issue[1] is whether a determination that a robbery victim reasonably believed the robber to be armed may be made on the basis of the robber's verbal representations alone, unaccompanied by any physical gestures or other visual evidence of the weapon's existence. We answer the question in the affirmative and affirm the conviction.

The facts are not in dispute. Sharon Plambeck, a bartender at the Lean-To Tavern in Portage, served drinks and a meal to Witkowski while he sat at the bar. He appeared to be intoxicated. When she gave him the check, he told her that "he wanted all the money out of the [cash] register and that he had a gun and don't be cute." Plambeck backed slowly down the bar to where two other patrons, Gordon and Micki Kluth, were seated. She wrote a note stating "Man is holding me up now" and handed it to Micki Kluth who left the bar to call the police. Witkowski then approached Gordon Kluth, stating that "he was having trouble holding up this tavern." The telephone rang and Plambeck answered it, quietly telling the caller to call the police. At that moment, Witkowski took some cash lying on the bar in front of Gordon Kluth and grabbed Micki Kluth's purse. Gordon Kluth struck Witkowski, knocking him to the floor and, with Plambeck's help, holding him there. Shortly thereafter, the police arrived and searched Witkowski. The search did not reveal a gun or any weapon.

Plambeck testified that she felt her "life was threatened" when Witkowski told her he had a gun

[1]Witkowski also challenges the sufficiency of the evidence at the preliminary hearing. He concedes, however, that "essentially the same" evidence was adduced at both the preliminary hearing and the trial. That evidence was adequate to support a bindover.

and wanted the money, and she backed away from him because she was afraid to turn her back on him. She described herself as "very scared and nervous, shaking all over." She stated on cross-examination, however, that she did not comply with Witkowski's demands and had no intention of doing so "unless he pulled a gun out." Gordon Kluth was unaware of Witkowski's statement about a gun until the incident was over.

Sections 943.32(1)(b) and (2), Stats., define armed robbery as follows:

> (1) Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a Class C felony:
>
> . . . .
>
> (b) By threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property.
>
> (2) Whoever violates sub. (1) by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe that it is a dangerous weapon is guilty of a Class B felony.

██ Wisconsin has adopted the "subjective" interpretation of the offense. The state need not prove that the defendant was in fact armed with a dangerous weapon; rather, the focus is on "the reasonable perception of the victim that he or she was in danger . . . ." *State v. Hopson,* 122 Wis. 2d 395, 401, 362 N.W.2d 166, 169 (Ct. App. 1984). If the victim's belief that the defendant was armed was reasonable, that is enough. *Id.* at 404,

362 N.W.2d at 170. The jury in this case was instructed that one of the elements of the offense was that Witkowski, at the time of the taking, must have "threaten[ed] the use of a dangerous weapon," and it found him guilty as charged.

Witkowski argues that, to convict, there must be evidence of something more than a verbal representation that the defendant is armed. In *Hopson,* the defendant reached under his shirt when he told the victim he was armed, and he was carrying packages under the shirt which created several bulges. The court rejected the defendant's argument that because the victim saw him stuff the packages into the waistband of his trousers, it was unreasonable for the victim to believe that he had a gun (he did not) and affirmed the conviction. *Id.* at 405, 362 N.W.2d at 170–71. While there was something more than a verbal threat in *Hopson,* we do not read the court's opinion as requiring that in all cases.

*Beamon v. State,* 93 Wis. 2d 215, 286 N.W.2d 592 (1980), more closely approximates the situation here. In *Beamon,* the defendant handed a note to a department store cashier stating that she wanted cash and that she had a bottle of nitroglycerin. She placed a small brown medicine bottle on the counter. The clerk, who could not tell whether there was anything in the bottle, gave the money to the defendant. The supreme court rejected the defendant's argument that there was no evidence that she was armed with a dangerous weapon, and upheld her conviction for armed robbery, stating:

> The robber's written representation to the victim is an admission by the defendant that the bottle, in truth and in fact, contains nitroglycer-

> in[]. Sec. 908.01(4)(b)1, Stats. The victim's testimo-
> ny constituted testimonial or direct evidence of the
> fact that the defendant committed the robbery
> while armed with a dangerous weapon.

*Id.* at 219, 286 N.W.2d at 595. We feel it is significant that the *Beamon* court referred only to the robber's note, making no mention of the medicine bottle, in concluding that the evidence was sufficient to convict. We note, too, that the dissenting justice in *Beamon* characterized the majority's holding as affirming the conviction solely on the basis of "the defendant's threat that he was armed ...." *Id.* at 221, 286 N.W.2d at 595–96 (Abrahamson, J., dissenting). We have expressed a similar view of *Beamon*—that "testimony ... that the defendant said a bottle contained nitro-glycerin was sufficient to prove that the defendant was armed." *Hopson,* 122 Wis. 2d at 400–01 n. 2, 362 N.W.2d at 168.

While it might be argued that the defendant's exhibition of the bottle to the victim in *Beamon* is similar to the "unloaded gun" or "toy gun" cases—or to *Hopson*—where there is something more than a verbal threat, we do not believe we should uniformly require one who is verbally threatened by a would-be robber to test the robber's threat that he or she is armed. Where, as here, the robber claims to be armed, we see nothing unreasonable in taking him or her at his or her word.

██

The test is whether the victim reasonably believed the defendant was armed. While exhibition of a weapon or a facsimile, or reaching toward a noticeable bulge in one's jacket, will normally be more persuasive on the question, we conclude that a victim could

221

reasonably believe from the robber's verbal representation alone that he or she was armed within the meaning of secs. 943.32(1)(b) and (2), Stats. Resolution of the question of the reasonableness of the victim's belief depends on the circumstances of the individual case; and that is true whether the robber makes a verbal representation alone, or whether the representation is accompanied by conduct or other physical evidence that he or she is in fact armed.

We emphasized in *Hopson,* 122 Wis. 2d at 403, 362 N.W.2d at 169, that "a victim who is threatened with a supposed weapon which is concealed is put in the same degree of fear and feels as strongly compelled to comply with the robber's demands as a victim who is threatened with a weapon which is openly displayed." That rationale applies whether the threat is simply verbal, or whether it involves something more. The "threat of use of a dangerous weapon" element of armed robbery focuses upon "the reasonable perception of the victim that he or she was in danger and not upon the defendant's possession or display of dangerous weapons or other dangerous-appearing articles." *Id.* at 401–02, 362 N.W.2d at 169.

We believe that a victim may be threatened with the use of a weapon within the letter and the spirit of sec. 943.32(2), Stats., by verbal threats alone. We hold, therefore, that if, under all the circumstances, the victim could reasonably believe the defendant's verbal representation that he or she was armed, that representation, standing alone, may be enough to meet the "threat of use of a dangerous weapon" requirement of sec. 943.32(2), regardless of whether the representation is accompanied by physical gesture or other visual evidence indicating the presence of a weapon.

Witkowski argues, however, that the evidence conclusively establishes that Plambeck did not and could not have "reasonably believed" that he was armed. He contends that her response to his demand—slowly moving away from him, writing a note and telling a caller to telephone the police—demonstrated that, in fact, she did not believe Witkowski's claim that he had a gun.

In any challenge to the sufficiency of the evidence to convict, the test is "whether the evidence adduced, believed, and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt." *State v. Koller,* 87 Wis. 2d 253, 266, 274 N.W.2d 651, 658 (1979).

> Conversely stated, the test is whether, when considered most favorably to the state and the conviction, the evidence is so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as "beyond a reasonable doubt." Furthermore, it is not necessary that this court be convinced of the defendant's guilt but only that the court is satisfied the jury acting reasonably could be so convinced.

*Id.* (Citations omitted.) Our review is further limited by the principle that "[i]f more than one inference can be drawn from the evidence, the inference which supports the jury finding must be followed unless the testimony was incredible as a matter of law." *Murphy v. State,* 75 Wis. 2d 522, 526, 249 N.W.2d 779, 781 (1977). (Footnote omitted.) And, in *State v. Alles,* 106 Wis. 2d 368, 377, 316 N.W.2d 378, 382 (1982), the supreme court stated:

> It bears repeating that we will not substitute our judgment for that of the jury unless, under all the evidence presented, the jury *could not* have found guilt beyond a reasonable doubt. Thus, as we view it, if any possibility exists that the jury *could* have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, we will not overturn a verdict even if we believe that a jury *should* not have found guilt based on the evidence before it. [Emphasis in original.]

Plambeck testified that Witkowski's demand for the money and his representation that he had a gun frightened her. She felt her life was threatened and she was "shaking all over." She backed slowly away from Witkowski because she was afraid to turn her back on him and furtively attempted to get someone to call the police. Then, when Gordon Kluth knocked Witkowski to the floor after Witkowski had grabbed his money and his wife's purse, Plambeck helped subdue Witkowski, standing on his hand because she feared he might "pull out ... a knife or something."

Witkowski emphasizes other evidence of his own and Plambeck's conduct in an attempt to establish that Plambeck could not, and did not, reasonably believe that he was armed. We agree that such evidence exists. Plambeck did not run away, nor did she immediately give Witkowski the money from the cash register. Indeed, she acknowledged at one point that she did not intend to meet his demands "unless he pulled a gun out."

The evidence was in conflict. The jury could have concluded from Plambeck's and Witkowski's conduct after the threat that Plambeck could not have formed a reasonable belief that Witkowski was armed. But it

is also possible that, on this record, the jury "*could* have drawn the appropriate inferences ... to find the requisite guilt ...." *Alles,* 106 Wis. 2d at 377, 316 N.W.2d at 382. (Emphasis in original.) Plambeck's fright, her attempts to have the police called, and her testimony that she stood on Witkowski's hand after Kluth subdued him for fear that he might reach for a weapon, constitute sufficient evidence that she believed Witkowski's assertion that he was armed and that her belief was reasonable. That being the case, we may not overturn the verdict even if we believe the jury should not have reached the verdict it did. *Id.*

*By the Court.*—Judgment and order affirmed.